# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND J. WATKINS, | ) 1:02-cv-6386-OWW-TAG HC |
| Petitioner, | ) REPORT AND RECOMMENDATION |
| v. | ) TO DENY PETITION FOR WRIT OF |
| | ) HABEAS CORPUS |
| J. VALADEZ, Warden, | ) (Doc. 1) |
| Respondent. | ) |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## PROCEDURAL HISTORY

At the time this petition was filed,[1] Petitioner was in custody of the California Department of Corrections and Rehabilitation serving a seven-year sentence in the California Medical Facility for possession of cocaine, pursuant to a judgment of the State of California, County of Kern.  On July 5, 2000, Petitioner pleaded guilty to one count of possession of cocaine, a violation of California Health & Safety Code §11350(a). (Clerk's Transcript on Appeal ("CT"), 36; Reporter's Transcript on Appeal ("RT") 13).  Petitioner also admitted a 1988 conviction for robbery, which constitutes a strike within the meaning of California Penal Code §§ 667(a)-(e) and 1170.12, and two prior convictions resulting in prison terms within the meaning of California Penal Code § 667.5(b).  (RT 14).

---

[1]Petitioner submitted a notice of change of address on December 7, 2005, indicating that following his anticipated release date of March 4, 2006, he would be living in a residence in Bakersfield, California.  (Doc. 18).  At the time he filed the change of address, Petitioner was incarcerated at the California Men's Prison at Vacaville, California.  (Id.).

1       At sentencing on August 31, 2000, the court agreed, with the stipulation of all parties, to also

2  sentence Petitioner for a second drug conviction, again for possession of cocaine, which Petitioner

3  incurred just twelve days after pleading guilty to the original offense.  (RT 21-23).   The court

4  sentenced Petitioner to the low term of 32 months on the first possession conviction, plus three one-

5  year enhancements for the three prior convictions.  (CT 42-45; RT 26).  To this total of five years

6  and eight months, the court also imposed a consecutive sentence in the second case of four years, but

7  suspended all but sixteen months.  (CT 42-45; RT 27).  The total sentence thus imposed amounted to

8  seven years.  (Id.).

9       Petitioner subsequently filed a direct appeal in the California Court of Appeals, Fifth

10  Appellate District (the "5th DCA"), raising no substantive issues but requesting that the 5th DCA

11  independently review the record for error under People v. Wende, 25 Cal.3d 436 (1979).  (Doc. 13,

12  Exh. B).  The 5th DCA invited Petitioner to submit additional briefing on any issues he wished to

13  raise.  (Id. at p. 4).  On December 22, 2000, Petitioner filed a letter brief indicating he did not feel his

14  trial attorney had adequately represented him because "he failed to make hardly any Motions on my

15  behalf."  (Id.).  Petitioner claimed to be suffering from mental problems at the time of his plea and

16  requested placement in a Proposition 36 drug treatment program rather than prison.  (Id.).

17       On July 18, 2001, the 5th DCA, in an unpublished decision, affirmed Petitioner's conviction

18  and sentence, concluding that the only reasonably arguably appellate issue presented was that of

19  Petitioner diversion to a drug treatment program.  (Id. at p. 5).  However, the Court concluded that

20  because of Petitioner's prior strike, a commitment to any facility other than state prison was

21  precluded by the plain language of Penal Code § 667( c).  (Id. at p. 4).

22       On January 16, 2002, Petitioner filed a state habeas petition alleging the following grounds

23  for relief: (1) denial of due process and equal protection rights by the circumstances under which

24  Petitioner was originally charged in this case; (2) ineffective assistance of trial counsel in failing to

25  make certain motions; and (3) ineffective assistance of trial counsel in failing to enforce the terms of

26  the plea agreement, which Petitioner maintains included a five-year sentence instead of a seven-year

27  sentence; and (4) ineffective assistance of appellate counsel in failing to raise any appellate issues.

28  (Doc. 13, Exh. D).  The state court denied this petition on February 1, 2002.  (Id., Exh. E).

1    On March 1, 2002, Petitioner filed a state habeas petition in the 5th DCA, alleging the same

2    issues.  (Id., Exh. F).  The 5th DCA denied this petition on March 14, 2002.  (Id., Exh. G).  On April

3    18, 2002, Petitioner raised the same issues in a state habeas petition filed in the California Supreme

4    Court (Id., Exh. H), which denied the petition on August 21, 2002.  (Id., Exh. I).

5    Petitioner filed the instant federal petition on October 24, 2002.  (Doc. 1).  On September 2,

6    2003, Respondent filed his Answer.  (Doc. 13).  On December 1, 2003, Petitioner filed his Traverse.

7    (Doc. 17).

8    Respondent concedes that Petitioner's issues have been fully exhausted.  (Doc. 13, p. 2).

9    **FACTUAL BACKGROUND**

10   The Court adopts the Statement of Facts in the 5th DCA's unpublished decision, which in turn

11   is taken from the Probation Officer's Report:

12   "On January 18, 2000, at approximately 8:05 p.m., officers patrolling the 700 block
     of South Owens Street in Bakersfield, California, saw a black male adult stumbling

13   on the sidewalk.  The subject, later identified as Raymond Joe Watkins, the
     defendant, was seen to almost trip and fall on the sidewalk.  As he was illuminated

14   with a spotlight, he immediately placed his hands above his head, dropping a small
     white object from his right hand.  The defendant walked towards the patrol car with

15   this hands in the air and told the officer, 'I don't have nothing on me.'  He further
     state he had, 'just got done drinking a few beers.'

16
     "As one officer continued to speak with the defendant, the second officer walked to

17   the area where he observed the defendant drop a small white object.  He located a
     chunk of suspected cocaine base which was seized and later booked into evidence.

18
     "Knowles [appellant's alias] was arrested and told the officers he had been using

19   cocaine base for four to five years.  He stated he had been using every day, but
     denied any knowledge of the cocaine base seized.  He stated, 'I can't go down for

20   this shit.  I'm a three striker.'  Knowles was transported to the Bakersfield Police
     Department where he was positively identified and photographed.  He was released

21   pending further investigation of this case.

22   "The Kern Regional Criminalistics Laboratory analyzed the substance seized and
     determined it was .10 grams of an off-white chunk containing cocaine. (Schedule

23   I)."

24   (Doc. 13, Exh. C, p. 3).

25   **DISCUSSION**

26   **I.  Jurisdiction.**

27   _____Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

28   to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of

1   the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362,

2   375 n. 7, 120 S.Ct. 1495 (2000).  Petitioner asserts that he suffered violations of his rights as

3   guaranteed by the United States Constitution.  The challenged conviction arises out of the Kern

4   County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a);

5   28 U.S.C. § 2241(d).  Accordingly, the Court has jurisdiction over this action.

6          On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

7   1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

8   Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586

9   (1997);  Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), cert. denied, 520 U.S. 1107 (1997),

10  overruled on other grounds by, Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable

11  to cases filed after statute's enactment).  The instant petition was filed on October 24, 2002, after the

12  enactment of the AEDPA, and thus it is governed by the AEDPA.

13  **II.  Legal Standard of Review.**

14         A petition for writ of habeas corpus under 28 U.S.C. 2254(d) will not be granted unless the

15  adjudication of a prisoner's claim (1) "resulted in a decision that was contrary to, or involved an

16  unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

17  the United States" or (2) resulted in a decision that "was based on an unreasonable determination of /

18  the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d);

19  Lockyer v. Andrade, 538 U.S. 63, 70-71, 123 S.Ct. 1166 (2003);  Williams v. Taylor, 529 U.S. at

20  412-413.

21         The first prong of federal habeas review involves the "contrary to" and "unreasonable

22  application" clauses of 28 U.S.C. § 2254(d)(1).  This prong pertains to questions of law and mixed

23  questions of law and fact.  Williams v. Taylor, 529 U.S. at 407-410;  Davis v. Woodford, 384 F.3d

24  628, 637 (9th Cir. 2004).  A state court decision is "contrary to" clearly established federal law "if it

25  applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or "if it

26  confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but

27  reaches a different result."  Brown v. Payton, 544 U.S. 133, 141, 125 S.Ct. 1432 (2005), citing

28  Williams v. Taylor, 529 U.S. at 405.  A state court decision involves an "unreasonable application"

1   of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the

2   facts in an objectively unreasonable manner."  Brown v. Payton, 544 U.S. at 141.  Consequently, a

3   federal court may not grant habeas relief simply because the state court's decision is incorrect or

4   erroneous; the state court's decision must also be objectively unreasonable.  Wiggins v. Smith, 539

5   U.S. 510, 511, 123 S.Ct. 2527 (2003),  citing Williams v. Taylor, 529 U.S. at 409.  Section

6   2254(d)(1)'s reference to "clearly established Federal law" refers to "the holdings, as opposed to the

7   dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."

8   Williams v. Taylor, 529 U.S. at 412; Barker v. Fleming, 423 F. 3d 1085, 1093 (9th Cir. 2005).

9       The second prong of federal habeas review involves the "unreasonable determination" clause

10  of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual findings.

11  Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029

12  (2003).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of

13  the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the

14  facts in light of the evidence presented in the State court proceeding."  Wiggins v. Smith, 539 U.S. at

15  520;  Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a

16  "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the

17  judgment").  A state court's factual finding is unreasonable when it is "so clearly incorrect that it

18  would not be debatable among reasonable jurists."  Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-

19  1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038, 125 S.Ct. 809 (2004).  The

20  AEDPA also requires that considerable deference be given to a state court's factual findings. A state

21  court's factual findings are  presumed to be correct, and such presumption of correctness may be

22  rebutted only by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

23      To determine whether habeas relief is available under § 2254(d),  the federal court looks to

24  the last reasoned state court decision as the basis of the state court's decision.  Robinson v. Ignacio,

25  360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court decided the petitioner's claims on the

26  merits but provided no reasoning for its decision, the federal habeas court must independently review

27  the record to determine whether habeas corpus relief is available under § 2254(d).  Himes v.

28  Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 981-982 (9th Cir.

2002).  Where the state court denied the petitioner's claims on procedural grounds or did not decide

such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court

must review the petitioner's 's claims de novo.  <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir.

2002).

**III.  Review of Petitioner's Claims.**

The instant petition itself alleges the following as grounds for relief:

**Ground One**          **Petitioner was denied his federal due process and equal protection rights by Bakersfield Police Officer Robert Guyton.**

**Ground Two**          **Petitioner was denied the effective assistance of trial counsel because counsel failed to file any motions to address the purportedly illegal actions of the Bakersfield Police Department.**

**Ground Three**        **Petitioner was denied the effective assistance of trial counsel because counsel failed to enforce the terms of the plea bargain.**

**Ground Four**         **Petitioner was denied the effective assistance of appellate counsel who failed to raise any appellate issues.**

**Ground One**          **Petitioner was denied his federal due process and equal protection rights by Bakersfield Police Officer Robert Guyton.**

Petitioner first contends that he was denied his due process and equal protection rights for the

following reasons: (1) California Penal Code § 849(b)(1) does not authorize a peace officer to release

a detained suspect and then later arrest and charge him because he refused to become an informant;

(2) Petitioner was denied his rights under Article I, Section 14, of the California Constitution and

Penal Code § 825 to be taken before a magistrate without unnecessary delay and, in any event, within

48 hours of his arrest; (3) Petitioner was denied the opportunity to locate and preserve evidence due

to the delay between his initial arrest and his subsequent re-arrest; (4) Penal Code § 861's

requirements were not met in this case; (5) Petitioner was not advised of his <u>Miranda</u> rights after his

January 18, 2000 arrest; and (6) Petitioner was not provided with defense counsel until months after

his original arrest.  (Doc. 1, pp. because he was charged in the instant offense only after he refused to

become an "informant" for the Bakersfield Police Department.  (Doc. 1, p. 5).  All of these

contentions are without merit.

**A.  Failure to Raise A Federal Habeas Issue.**

First, it must be noted that the Court considers the first four of these issues to be questions of state law exclusively, and, hence, outside the ambit of this Court's habeas jurisdiction.  A writ of habeas corpus is not available under 28 U.S.C. § 2254 (a) for an alleged error in the application or interpretation of a state law.  Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir.1983); see. also. Lincoln v. Sunn, 807 F. 2d 805, 814 (9th Cir.1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  Habeas review is not available for claims that the state court erroneously excluded or allowed particular evidence according to state evidentiary rules. Jammal v. Van de Kamp, 926 F. 2d 918, 919 (9th Cir. 1991). Habeas review cannot be used to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377, 92 S.Ct. 2174 (1972).

The prohibition against using habeas review to consider state law errors was reiterated in Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475 (1991).  In that case, the Supreme Court reversed the decision of the Ninth Circuit, which had granted federal habeas relief.  The Supreme Court held that the Ninth Circuit erred in concluding that the evidence was incorrectly admitted under state law because "it is not the province of a federal habeas court to reexamine state court determination on state law questions." Id. at 67-68, citing Lewis v.  Jeffers, 497 U.S. 764, 110 S.Ct. 3092 (1990), and Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871(1984) (federal courts may not grant habeas relief where the sole ground presented involved a perceived error of state law unless said error is so egregious as to amount to a violation of the Due Process or Equal Protection Clauses of the Fourteenth Amendment).

The Supreme Court further reiterated that the standard of review for a federal habeas court is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)."  Estelle v. McGuire, 502 U.S. at 68.  The Supreme Court also stated that in order for error in the state trial proceedings to reach the level of a due process violation, the error had to be one involving "fundamental fairness," Estelle v. McGuire, 502 U.S. at 73, and that "we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" Id. //

Each of the first four sub-issues involves the purported misapplication of state statutes to Petitioner's case.  They do not implicate federal constitutional rights.[2]  Accordingly, they are not issues that would entitle Petitioner to habeas relief.

**B.  Petitioner Has Waived His Claims.**

Next, the Court notes that Petitioner's claims in Ground One of the petition were waived by his plea of guilty.   By entering a guilty plea, Petitioner waived the right to a jury trial, the ability to confront his accusers, the power to compel the attendance of witnesses, and generally to challenge the evidence that Petitioner committed the offense.  See Boykin v. Alabama, 395 U.S. 238, 242-43, 89 S.Ct. 1709 (1969).  Typically, one who enters a valid guilty plea cannot on habeas corpus challenge a pre-plea constitutional violation; thus, a valid guilty plea bars the federal court from reviewing claims that relate to other constitutional rights.  Tollett v. Henderson, 411 U.S. 258, 266-267, 93 S.Ct. 1602 (1973); Hudson v. Moran, 760 F.2d 1027, 1029-1030 (9th Cir. 1985).

///

_____

[2] Petitioner attempts to state a federal claim by alleging that the failure of the trial court to properly follow various California statutes violated Petitioner's "due process" rights. (Doc. 1, p. 6). However, Petitioner's broad assertion does not transform this claim into a federal one. Merely placing a "due process" or "equal protection" label on an alleged violation does not entitle Petitioner to federal relief. Langford v. Day, 110 F.3d 1386, 1388-1389 (1996). Broad, conclusory allegations of unconstitutionality are insufficient to state a cognizable claim. Jones v. Gomez, 66 F.3d 199, 205 (9th Cir.1995); Greyson v. Kellam, 937 F.2d 1409, 1412 (9th Cir.1991) (bald assertions of ineffective assistance of counsel did not entitle the petitioner to an evidentiary hearing); see also Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999), citing Gray v. Netherland, 518 U.S. 152, 162-163, 116 S.Ct. 2074 (1996) ("general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion"). A petitioner in federal court cannot merely characterize some state act as unconstitutional and expect the Court to explore all possible grounds under each article and amendment of the Constitution. While courts should liberally interpret pro se pleadings with leniency and understanding, this should not place on the reviewing court the entire onus of creating a federal claim for the petitioner. In this instance, it appears to the Court that Petitioner's broad claim of a "due process" violation is mere rhetoric and that the gravamen of Petitioner's claims in Ground One are violations of state law only.  In his Petition, Petitioner cites no federal case law supporting his claim of a due process violation, and in his Traverse, having been put on notice that Respondent was contending that no federal claim had been raised, Petitioner was unable to provide any federal authority that his claim was anything other than a state law issue.(Doc. 1, p. 6; Doc. 17, pp. 2-4).

A petitioner who has pleaded guilty may only contend that his guilty plea was not voluntary and intelligent, see e.g., Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 369 (1985); Boykin, 395 U.S. at 242-243, or contend that the advice he received from his counsel was ineffective in violation of the Sixth Amendment. See, e.g., McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449 (1970); Tollett, 411 U.S. at 267; Hudson, 760 F.2d at 1030.  As the Supreme Court has recognized,

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

Tollett v. Henderson, 411 U.S. at 267; McMann v. Richardson, 397 U.S. at 771 (holding that a defendant who pleads guilty on the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases); see also Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994), overruled on other grounds in Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) ("As a general rule, one who voluntarily pleads guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations.").

Thus, only a petitioner's pre-plea claims that attack the voluntary and intelligent character of his plea are cognizable.  And to the extent that a petitioner challenges his counsel's advice, he may only present claims relating to the plea advice; claims relating to pre-plea advice are barred by Tollett.  See Moran v. Godinez, 57 F.3d at 700.

Here, Petitioner's claims regarding the conduct of Officer Guyton, Petitioner's original arrest and release, and his subsequent re-arrest on the instant charge are all pre-plea issues that do not implicate the voluntariness of Petitioner's guilty plea and therefore have been waived.  Id.

However, assuming, arguendo, that Petitioner's claims in Ground One have not been waived and that they do raise federal constitutional issues, the Court rejects these claims on their merits.

**C.   Petitioner's Rights Were Not Violated**.

**1.   Violation of California Penal Code § 849(b)(1).**

Petitioner contends that he was released after his initial arrest and then recharged in violation of California Penal Code § 849(b)(1), because that section does not authorize re-arrest based on refusal to cooperate with the police.  (Doc. 1, p. 5).  This argument is without merit.

California Penal Code § 849, subdivision (b)(1) provides:

> (b) Any peace officer may release from custody, instead of taking such person before a magistrate, any person arrested without a warrant whenever:
>
> (1) He or she is satisfied that there are insufficient grounds for making a criminal complaint against the person arrested.

Cal. Pen. Code § 849(b)(1).

Although the Court could find no cases that fit the unique facts of this case, the plain meaning of California Penal Code § 849(b)(1) is that a police officer may release an individual if there are insufficient grounds to charge him.  The language of this provision does not in any way limit the government's authority to re-arrest the suspect at a later time if it is determined that, in fact, sufficient grounds do exist.  Moreover, in California, there is no requirement that a defendant be indicted or arrested at any particular time between the commission of a crime and the expiration of the time allowed by the statute of limitations for that particular crime.  People v. Aguirre, 181 Cal.App.2d 577, 579 (1960).  One does not become an "accused" until the filing of a complaint or other charge.  People v. Jordan, 45 Cal.2d 697, 708 (1955).

///

From the foregoing, the Court cannot discern any violation of California Penal Code § 849(b)(1) when the officer released Petitioner and then later re-arrested him. Certainly, any hypothetical violation would be *de minimis* and would not rise to the level of a federal constitutional issue. Thus, the state court's adjudication of this issue was not contrary to nor an unreasonable interpretation of clearly established federal law.

## 2. Delay In Bringing Petitioner to a Magistrate.

Included in the Constitutional right of an accused person to a speedy and public trial (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15) is the right of a person in police custody to be promptly brought before a magistrate and formally charged. Article I, § 14 of the California Constitution requires: "A person charged with a felony by complaint...shall be taken without unnecessary delay before a magistrate...." Further, California Penal Code § 849, subdivision (a) provides: "When an arrest is made without a warrant by a peace officer or private person, the person arrested, if not otherwise released, shall, without unnecessary delay, be taken before the nearest or most accessible magistrate...." California Penal Code § 825 implements the right to a speedy appearance before a magistrate. In January 2000, § 825 provided, in pertinent part, as follows: "the defendant must in all cases be taken before the magistrate without unnecessary delay, and, in any event, within two days after his arrest, excluding Sundays and holidays...." (Cal. Pen. Code § 825).[3]

Here, the chronology of events indicates that Petitioner was never charged after his initial arrest in January 2000, but instead was released without charges. At that point, Petitioner had no need of the protections afforded by the above-referenced provisions: i.e., he was not in custody and

---

[3] The current version of California Penal Code § 825 provides, in pertinent part, as follows: " the defendant shall in all cases be taken before the magistrate without unnecessary delay, and, in any event, within 48 hours after his or her arrest, excluding Sundays and holidays."

he was not charged with an offense.  Indeed, bringing him before a magistrate at that point would have been meaningless since there were no proceedings to be had before a magistrate in the absence of formal charges being brought.

An arrest warrant for Petitioner was subsequently issued on April 5, 2000, and Petitioner was arrested on April 22, 2000.  (CT 6).  Two days later, on April 24, 2000, Petitioner was arraigned, advised of his rights, pleaded not guilty, and had an attorney appointed to represent him.  (CT 7).  Thus, when charges were filed against Petitioner, it is uncontroverted that he was arraigned within the period specified by statute.  Hence, no violation of Penal Code § 825 occurred.

### 3.  The Preliminary Hearing.

Petitioner next maintains that the state court erred in conducting his preliminary hearing over two separate days.  This contention is also without merit.

California Penal Code § 861 provides in pertinent part as follows:

> (a) The preliminary examination shall be completed at one session or the complaint shall be dismissed, unless the magistrate, for good cause shown by affidavit, postpones it.

Section 861 further specifies that any postponement shall not be for more than ten court days unless either the defendant waives his right to a continuous preliminary examination or the prosecution establishes good cause for the delay.  Cal. Pen. Code § 861(a)(1), (2).  The primary purpose of this section is to "see to it that no one is detained in custody indefinitely or capriciously in order that a case may be developed in the future, or circumstances arise that will justify a trial."  Stroud v. Superior Court, 23 Cal.4th 952, 964 (2000).  The requirement to complete the preliminary examination in one "session" does not mean that it must be completed in one "day."  Rather, a "session" is "'an actual sitting continued by adjournments in ordinary course from day to day, or over

1   Sundays and holidays, but not interrupted by adjournments to a distant day.'" In re Karpf,

2   10 Cal.App.3d 355, 365 (1970).  In 1981, Penal Code § 861 was amended to include not only

3   interruptions for "good cause," but also "to conduct brief court matters so long as a substantial

4   majority of the court's time is devoted to the preliminary examination."  Cal. Penal Code § 861,

5   subd. ( c); see Stroud, 23 Cal.4th at 686.

6

7       Here, the minute order for the first day of the preliminary examination indicated that it was

8   continued from May 5, 2000, a Friday, until May 8, 2000, a Monday, on the prosecution's motion

9   because of the unavailability of one of its witnesses.  (CT 8).  When the preliminary examination

10  resumed, it appears that the only witness who testified was Officer Guyton.  (Id.).  The parties

11  stipulated to the results of the lab report and the court then found sufficient cause to believe that

12  Petitioner should be bound over for trial.  (Id.).

13

14      From the foregoing, it is evident that good cause existed for the trial court to postpone the

15  preliminary examination for one court day in order to ensure the attendance of Officer Guyton, the

16  prosecution's only witness.  Indeed, in the Court's view, to do otherwise would have itself been an

17  abuse of discretion under the circumstances.  The delay incurred was minimal and the preliminary

18  examination, once resumed, was concluded quickly.

19

20      Thus, it does not appear that either the letter or the spirit of California Penal Code § 861 was

21  violated by the state court.  Nor has Petitioner shown any federal constitutional violation as a result

22  of the state court's decision to grant a postponement of the preliminary examination for one court

23  day.  Accordingly, Petitioner's contention must be denied.

24

25  ///

26

27  ///

28

1

2

3        **4. Miranda Violation**.

4        Petitioner next contends that statements were elicited from him without giving him his proper

Miranda warnings.  This contention must be denied.

5        The basis for the warnings required by Miranda is the privilege against self-incrimination,

6

Miranda v. Arizona, 384 U.S. 436, 457-470, 86 S.Ct. 1602 (1966), and that privilege is not violated

7

when the information elicited from an unwarned suspect is not used against him.  See Murphy v.

8

Waterfront Com'n. of New York Harbor, 378 U.S. 52, 78-79, 84 S.Ct. 1594 (1964); People v.

9

Varnum, 66 Cal.2d 808, 812 (1967).

10

11        Here, Respondent correctly argues that no trial occurred and no inculpatory statements from

12

Petitioner were ever used against him at trial.  Hence, Miranda's prophylactic effect is inapplicable

13

because there is no unlawful state action, i.e., the attempted use at trial of a statement obtained

14

without adequate Miranda warnings, against which to protect Petitioner.  Accordingly, the state

15

court's decision was not contrary to nor an unreasonable application of clearly established federal

16

law.

17

18

19        **5. Delay In Obtaining Counsel**.

20        Finally, Petitioner argues that the delay in providing him with counsel until four months after

21

his initial detention "prevented his ability to develop any independent facts, or to design his defense

22

based on available information or to corroborate information."  (Doc. 1, p. 6).  This contention is

23

likewise without merit.

24

25        The Sixth Amendment provides that "the accused shall enjoy the right...to have the

26

Assistance of Counsel for his defense."  U.S. Const., Amend. VI.  The federal courts have interpreted

27

this amendment to entitle a criminal defendant to counsel at all critical stages of a proceeding

28

including sentencing.  Mempa v. Rhay, 389 U.S. 128, 134, 88 S.Ct. 254 (1967); Lopez v. Thompson, 202 F.3d 1110, 1117 (2000).  A critical stage is any "stage of a criminal proceeding where substantial rights of a criminal accused may be affected."  Mempa, 389 U.S. at 134; Hovey v. Ayers, 458 F.3d 892, 901 (9th Cir. 2006); see also Bell v. Cone, 535 U.S. 685, 696, 122 S.Ct. 1843 (2002) (defining a critical stage as "a step of a criminal proceeding, such as arraignment, that [holds] significant consequences for the accused.").

The Ninth Circuit has distilled a three-factor test for determining what constitutes a critical stage, in which the court considers whether: (1) "failure to pursue strategies or remedies results in a loss of significant rights," (2) "skilled counsel would be useful in helping the accused understand the legal confrontation," and (3) "the proceeding tests the merits of the accused's case."  Hovey, 458 F.3d at 901, quoting Menefield v. Borg, 881 F.2d 696, 698-699 (9th Cir. 1989).  Here, as Respondent correctly notes, Petitioner's initial arrest resulted in his release, not in further legal proceedings.  It was only after his re-arrest that legal proceedings were  commenced against Petitioner.  Petitioner's initial detention and subsequent release was neither a critical stage of the proceedings nor one in which his substantial rights were affected.  No attorney could pursue "strategies," nor assist Petitioner in understanding this "legal confrontation," nor were there legal proceedings of any sort that would "test the merits" of Petitioner's case.  Until Petitioner's re-arrest, there was no case, no proceedings, and no need for counsel.

Upon his re-arrest, however, it is undisputed that Petitioner was provided with counsel at all critical stages of the proceedings.  (CT 7-9; 29; 32;33; 35; 38; 41.)  Accordingly, no constitutional violation occurred.  Indeed, Petitioner's interpretation of "critical stages of a proceedings" and when his "substantial rights may be affected" is so broad that, if implemented, would require appointment of counsel in countless cases in which charges are never actually filed and in untold situations in

1   which assistance of counsel would be at best premature or at worst irrelevant and useless.  This is

2   neither contemplated by Sixth Amendment jurisprudence nor otherwise mandated by federal law.

3   Thus, Petitioner's claim must be denied.

4

5   **Ground Two**          **Petitioner was denied the effective assistance of trial counsel because
                            counsel failed to file any motions to address the purportedly illegal
6                           actions of the Bakersfield Police Department.**

7
        Petitioner next contends that he was denied the effective assistance of trial counsel because

8
    counsel failed to raise the issue of his purportedly illegal arrest and failed to file a motion under
9
    California Penal Code § 995.[4]  (Doc. 1, p. 7).  This contention is also without merit.
10

11      A.  **The Standard For Ineffective Assistance of Counsel**.

12
        In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court
13
14  must consider two factors.  Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064

15  (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that

16  counsel's performance was deficient, requiring a showing that counsel made errors so serious that he
17
    or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Strickland, 466
18
19  U.S. at 687.  To establish this, the petitioner must show that counsel's representation fell below an

20  objective standard of reasonableness.  Id. at 688.  The petitioner must identify counsel's alleged acts

21  or omissions that were not the result of reasonable professional judgment considering the

22

23      [4]  California Penal Code § 995 provides in pertinent part as follows:

24      (A) Subject to subdivision (b) of Section 995a, the indictment or information shall be set aside
        by the court in which the defendant is arraigned, upon his or her motion, in either of the
25      following cases:
        ...
26      (2) If it is an information:
            (A) That before the filing thereof the defendant had not been legally committed by a
27          magistrate.
            (B) That the defendant had been committed without reasonable or probable cause.
28

1    circumstances.  Id.; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial

2    scrutiny of counsel's performance is highly deferential, and a court indulges a strong presumption

3    that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland,

4    466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

5

6        Second, a petitioner must show prejudice, i.e., whether counsel's errors were so egregious as

7    to deprive him of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688, 694.  To

8    establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's

9    unprofessional errors, the result of the proceeding would have been different.  A reasonable

10   probability is a probability sufficient to undermine confidence in the outcome."  Id.; Williams v.

11

12   Taylor, 529 U.S. at 391.    In so doing, the Court must also evaluate whether the entire trial was

13   fundamentally unfair or unreliable because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78

14   F.3d at 1345; United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

15

16        The Court does not need to consider the two elements in any particular order, nor does the

17   Court need to consider both if the showing on either one is insufficient.  Strickland, 466 U.S. at 697.

18   A court need not determine whether counsel's performance was deficient before examining the

19   prejudice suffered by the petitioner as a result of the alleged deficiencies.  Id.   The object of an

20   ineffectiveness claim is not to grade counsel's performance.  Id.  "If it is easier to dispose of an

21

22   ineffective claim on the ground of lack of sufficient prejudice, which we expect will often be so, that

23   course should be followed."  Id.

24        **B.  Petitioner Has Not Raised A Cognizable Habeas Claim.**

25

26        As mentioned in the previous section, one who enters a valid guilty plea cannot on habeas

27

28   corpus challenge a pre-plea constitutional violation; thus, a valid guilty plea bars the federal court

1   from reviewing claims that relate to other constitutional rights.  Tollett, 411 U.S. at 266-267;

2   Hudson, 760 F.2d at 1029-30.

3

4       Here, Petitioner's contentions regarding ineffective assistance of counsel do not implicate the

5   voluntary or intelligent nature of the plea, nor do they question counsel's advice regarding that plea.

6   Although Petitioner implies that counsel's purportedly deficient performance frustrated Petitioner,

7   thus indirectly contributing to Petitioner's strategic decision to "relent" and plead guilty, such

8   implications fall far short of alleging that counsel's *erroneous advice* contributed to an *involuntary*

9   *and unknowing* plea.  Nowhere in his petition does Petitioner claim that counsel's advice regarding

10  pleading guilty was erroneous.   Moreover, the record indicates that Petitioner was fully advised of

11  the legal consequences of entering a guilty plea.  The petition contains no allegation that Petitioner's

12  counsel's deficient performance affected the knowing and intelligent nature of his guilty plea.

13  Accordingly, Petitioner's ineffective assistance claim has been waived and need not be considered.

14

15

16      **C.  Petitioner Was Not Denied The Effective Assistance Of Counsel.**

17      However, even assuming, arguendo, that such a claim of ineffective assistance were properly

18  raised, Petitioner has established neither ineffectiveness nor prejudice as required by Strickland.

19

20      In determining whether counsel was ineffective in advising a petitioner to plead guilty

21  because counsel did not properly raise the issue of the purportedly "illegal" charges against Petitioner

22  and counsel's failure to file a § 995 motion, the determination whether the error "prejudiced"

23  petitioner depends on whether counsel's conduct would have caused counsel to not only have

24  advised Petitioner to go to trial, but also whether the trial's outcome would have been favorable to

25  Petitioner had counsel given "proper" advice or had he filed the motions Petitioner requested.  See

26  Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366 (1985).

27

28

First, Petitioner has failed to establish that trial counsel's conduct in failing to raise this issue or file a § 995 motion was deficient.  As discussed in the previous section, the Court has concluded that no impropriety occurred in the filing of charges against Petitioner months after his initial arrest and release on grounds of insufficient evidence, a result authorized by § 849(b)(1).  California Penal Code § 995 provides in relevant part, that upon a defendant's motion, an information shall be set aside where either (a) the defendant had not been legally committed by a magistrate; or (b) the defendant had been committed without reasonable or probable cause.

In California, a motion to set aside an information is not applicable where the error complained of is unascertainable from the preliminary hearing transcript or is not known until after conviction.  Miller v. Superior Court, 101 Cal.App.4th 728, 739 (2002); Merrill v. Superior Court, 27 Cal.App.4th 1586, 1596 (1994).  An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.  Salazar v. Superior Court, 83 Cal.App.4th 840, 842 (2000).

From the foregoing, it is obvious that a § 995 motion would not have been successful: no violations occurred vis-a-vis Petitioner's re-arrest, his arraignment before a magistrate, his preliminary hearing, or the appointment of counsel for him.  Moreover, the evidence presented at the preliminary hearing was sufficient to establish probable cause for possession of cocaine base.  See People v. West, 224 Cal.App.3d 1337, 1348 (1990)(evidence of possession of cocaine based on observations of police officers was sufficient to find probable cause and support denial of motion to set aside information).

Therefore, trial counsel's performance cannot have been deficient for failing to file a § 995 motion that had no merit and could not prevail.  Nor has Petitioner indicated what other motions

1    might have or should have been filed by counsel at trial.  Failing to make motions that are not

2    grounded in law or fact and simply asserted on a "nothing to lose" basis will not establish

3    ineffectiveness of counsel.  <u>Lowry v. Lewis</u>, 21 F.3d 344, 346 (9th Cir. 1994).

4

5          Moreover, Petitioner offers no support, by way of affidavits or other supplemental evidence,

6    for the conclusion that a reasonable attorney would have abjured the plea agreement to which

7    Petitioner ultimately acquiesced and advised Petitioner to proceed to trial despite the unquestioned

8    risk of incurring a longer, nine-year sentence if convicted by a jury and sentenced by the trial court.

9    It bears emphasis that at sentencing the trial judge expressed reticence at sentencing Petitioner to the

10   low term, concluding that, "I don't think he is probably deserving of a low term.  Looking at the

11   record, it doesn't, in a large sense justify what the Court intends to do."  (RT 25).   Nor has Petitioner

12   established that he would have been able to present any legitimate defense at trial other than to point

13   out the circumstances of his arrest and subsequent charging that have already been discussed, and

14   rejected as meritless, in Ground One.  In sum, Petitioner has failed to sustain his burden of showing

15   deficient performance by trial counsel.

16

17          Second, Petitioner has failed to establish prejudice because he has made no showing how his

18   counsel's purported deficiencies would have affected the voluntary or knowing nature of his plea.  A

19   habeas claim cannot prevail where the record clearly reflects that Petitioner's guilty plea was

20   knowingly, intelligently, and voluntarily made.  <u>Neyland v. Blackburn</u>, 785 F.2d 1283 (5th Cir.

21   1986); <u>U.S. v. Todaro</u>, 982 F.2d 1025 (6th Cir. 1993).   To satisfy the Constitution, a guilty plea

22   must be voluntary and intelligent. <u>See</u> <u>e.g.</u>, <u>Hill</u>, 474 U.S. at 56; <u>Boykin</u>, 395 U.S. at 242.  In

23   addition, a criminal defendant must be advised of the constitutional protections he is giving up by

24   pleading guilty, including the privilege against self incrimination, the right to a jury trial, and the

25   right to confront witnesses.  <u>Boykin</u>, 395 U.S. at 243.  If a petitioner challenges a guilty plea, the

Court must determine "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill, 474 U.S. at 56, quoting North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164 (1970).

At the plea proceeding, Petitioner, represented by counsel, informed the trial court that he was withdrawing his plea of not guilty and entering a plea of guilty, also admitting one "strike" prior, and three prior prison terms which exposed him to a maximum of nine years in prison.  (RT 11-17). Petitioner was informed of his rights to a trial by jury, to the processes of the court to subpoena witnesses for the defense, his right to see, hear, and cross-examine witnesses, and to testify or to remain silent and not incriminate himself.  (Id.).  Petitioner indicated he understood each of those rights and that he was willing to give up those rights. (Id.).

Petitioner expressly informed the trial court that no one had made any threats or promises in order to induce him to plead guilty.   (RT 15-16).  Based on Petitioner's own representations, the court concluded that Petitioner's admissions and waivers "were made knowingly, intelligently and voluntarily."  (RT 16).  Petitioner then pleaded guilty to the charge of possession of cocaine base. (RT 13).   Following the entry of Petitioner's plea, Petitioner's admitted the 1988 strike and that he had suffered three prior prison terms within the meaning of Penal Code § 667.5(b).  (RT 14-15).

Petitioner's admissions in open court negate his argument of his counsel's ineffectiveness. Representations of the petitioner at a plea hearing, as well as any findings made by the judge accepting the plea, constitute a "formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621 (1977).   Thus, "[s]olemn declarations in open court carry a strong presumption of verity."  United States v. Moore, 599 F.2d 310, 314 (9th Cir. 1979), citing Blackledge, 431 U.S. at 74; Chizen v. Hunter, 809 F.2d 560, 562 (9th Cir.1986) (same). Under these circumstances, the Court simply cannot correlate any allegedly deficient conduct by trial

1   counsel to Petitioner's decision to plead guilty.

2       To the contrary, the foregoing chronology establishes that Petitioner's plea was knowing and

3

4   voluntary; thus, any instances of deficient performance by trial counsel could not possibly have had an

5   effect on the outcome, i.e., on the entry of a knowing and voluntary plea of guilty   Accordingly,

6   Petitioner has failed to show prejudice under Strickland.

7       For all of the reasons set forth above, the Court concludes that the state court's adjudication

8

9   rejecting Petitioner's claims of ineffective assistance of counsel was not contrary to nor an

10  unreasonable application of clearly established federal law.

11  **Ground Three**          **Petitioner was denied the effective assistance of trial counsel because
                              counsel failed to enforce the terms of the plea bargain.**
12

13      Petitioner next maintains that he was denied the effective assistance of trial counsel because

14

15  counsel failed to enforce the terms of the plea agreement.  (Doc. 1, p. 10).  In his habeas petition,

16  Petitioner contends that "after 'relenting' to the deal that was originally offered (Five years), he was

17  not sentence [sic] to five years, and was instead given a sentence of seven (7) instead...[although] at

18  no time was petitioner forewarned that the original plea was rendered 'null and void' for whatever

19

20  purpose...." (Doc. 1, p. 10).    Again, this contention lacks merit.

21      Initially, the Court notes that, as with Ground Two, Petitioner, by his plea of guilty, waived

22  the claim of effective assistance of trial counsel.  Tollett, 411 U.S. at 266-267; Hudson, 760 F.2d at

23  1029-30.

24

25      Assuming, arguendo, that the issue has not been waived, the Court will address the merits of

26  this contention.  On June 23, 2000, Petitioner, accompanied by his trial attorney, appeared before the

27  trial judge for a readiness hearing.  (CT 32).  At that hearing, Petitioner rejected a plea bargain

28

1   offering a five year sentence.  (Id.).  Petitioner was advised that his maximum exposure was nine

2   years.  (Id.).   The judge set the trial date for July 3, 2000. (Id.).  On July 3, 2000, the court heard in

3   limine motions and preliminary trial matters were discussed such as the number of challenges

4   available to counsel.  (CT 33; RT 8-10).   After a jury was selected and sworn in, the court adjourned

5

6   for the July 4th  holiday and ordered the parties to return on July 5, 2000.  (CT 34).

7        Shortly after resuming the proceedings on July 5, 2000, Petitioner's attorney advised the court

8   that Petitioner wished to change his plea and enter a plea of guilty.  (RT 11).  Defense counsel

9   indicated to the court that the change of plea was "new to [him that] morning."  (RT 13).  Counsel

10  further indicated that the idea was entirely that of Petitioner, explaining, "Mr. Watkins has maintained

11  a desire to go to trial through, and we are ready to go to trial.  However, I am acceding to his wishes.

12

13  He wishes to change his plea."   (RT 13).

14        At the outset, the trial court explicitly asked Petitioner, "You understand that the maximum

15  confinement time in all the allegations would be nine years?"  (RT 11).  Petitioner responded, "Yes."

16

17  (Id.).  The trial court also fully advised Petitioner of the various rights he would be giving up and the

18  other penalties, including fines and registration requirements, that could be imposed as well.  (RT 11-

19  14; 16).  In the course of that advisement, Petitioner was asked whether anyone had threatened him

20

21  "in any way in an effort to get [him] to give up any of the rights" the court had mentioned.  (RT 12-

22  13).  Petitioner responded, "No."  (RT 13).

23        From the foregoing, it is abundantly clear that at the June 23, 2000 hearing, Petitioner, with

24  advice and counsel from his attorney, rejected the five-year plea agreement and chose to go to trial.

25

26  Indeed, subsequently, both counsel and Petitioner were present as voir dire commenced and a jury

27  eventually was selected.  Such conduct is incompatible with a good faith belief that a five-year plea

28

1   agreement was still being contemplated.

2       After adjournment for the July 4th holiday, Petitioner advised the court that he wanted to

3   change his plea to guilty.  At that point, the court advised him that he could face up to nine years in

4

5   prison.  He indicated that he understood this and maintained that no one had made any threats or

6   otherwise induced him to enter into the plea of guilty.

7       Under such circumstances, it is specious for Petitioner to suggest, as he does now, that he was

8

9   unaware either that the five-year deal was no longer available or that he could face up to nine years if

10  he pleaded guilty.  The record of Petitioner's own words directly contradicts such an assertion.  The

11  record is similarly devoid of any suggestion that trial counsel failed to properly advise Petitioner

12  regarding these matters.

13

14      In light of the foregoing, Petitioner's claim of ineffective assistance of trial counsel as to the

15  terms of the plea bargain is without merit.  Strickland, 466 U.S. at 687; 688, 694.  The state court

16  decision in this regard was not contrary to or an unreasonable application of clearly established

17  federal law.  Accordingly, Ground Three should be denied.

18

19  **Ground Four**           **Petitioner was denied the effective assistance of appellate counsel who**
                              **failed to raise any appellate issues.**

20

21      Finally, Petitioner contends that he was denied effective appellate counsel because she failed

22  to raise any substantive appellate issues on direct appeal.  (Doc. 1, p. 11).  For several reasons, this

23  contention also fails.

24

25      In challenges to the effective assistance of appellate counsel, the same standards apply as with

26  the claims of ineffective assistance of trial counsel.  Smith v. Robbins, 528 U.S. 259, 285, 120 S.Ct.

27  746 (2000); Smith v. Murray, 477 U.S. 527, 106 S.Ct. 2661 (1986).  In Smith, the United States

28

Supreme Court indicated that an appellate attorney filing a merits brief need not and should not raise every non-frivolous claim.  Robbins, 528 U.S. at 288.  Rather, an attorney may select from among them in order to maximize the likelihood of success on appeal.  Id.  As a result, there is no requirement that an appellate attorney raise issues that are clearly untenable.  Gustave v. United States, 627 F.2d 901, 906 (9th Cir. 1980).

As with Grounds Two and Three, Petitioner's guilty plea waives this issue.  Tollett, 411 U.S. at 266-267; Hudson, 760 F.2d at 1029-30.   However, even assuming, arguendo, that the issue is not waived, it is completely without merit.

In preceding sections of this Report and Recommendation, this Court concluded that trial counsel's performance was not been deficient and that Petitioner had not been denied the effective assistance of trial counsel.  Since Petitioner's ineffectiveness claim for appellate counsel is based on her purported failure to address deficiencies in trial counsel's performance that simply do not exist, it is patent that no legitimate basis exists for a claim of ineffective assistance on the part of appellate counsel.  Featherstone v. Estelle, 948 F.2d 1497, 1507 (9th Cir. 1991).

Accordingly, Petitioner has failed to show that the state court's adjudication of this issue was contrary to or an unreasonable application of clearly established federal law.  Thus, Ground Four should be denied.

**RECOMMENDATION**

Based on the foregoing, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be DENIED.

This Report and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the

Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty (20) days after being served with a copy of this Report and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Report and Recommendation." Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: __February 10, 2007__                                    _____/s/ Theresa A. Goldner_____

**j6eb3d**                                                              UNITED STATES MAGISTRATE JUDGE